## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | **CRIMINAL ACTION NO. 06-83** |
| v. | : | |
| | : | **CIVIL ACTION NO. 11-7006** |
| MARK LAWRENCE, | : | |
| | : | |

### MEMORANDUM OPINION

**RUFE, J.**                                                   **OCTOBER 13TH, 2016**

Before the Court is Defendant Mark Lawrence's Motion to Vacate, Set Aside, or Correct his Sentence Pursuant to 28 U.S.C. § 2255. For reasons that follow, the Court finds that the grounds pursuant to which Defendant brings his motion lack merit. Consequently, the Court will deny the Motion without an evidentiary hearing.[1]

## I.    PROCEDURAL HISTORY

Defendant's motion challenges his 2007 conviction by jury on three counts of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On December 7th, 2005, a violent crimes task force made up of Philadelphia police officers and federal agents was investigating a spike of shootings in West Philadelphia, including the November 29, 2005 shooting of Justin Thompson.[2] That evening, the team received a tip from a confidential informant that Defendant had shot Thompson and was driving a white Dodge Magnum.[3] As the

---

[1] "In evaluating a federal habeas petition, a District Court must hold an evidentiary hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *United States v. Kenley*, 440 F. App'x 78, 80 (3d Cir. 2011) (citing 28 U.S.C. § 2255(b)). If the record as a whole "conclusively show[s] that the prisoner is entitled to no relief," a court is not required to hold an evidentiary hearing. *United States v. Dawson*, 857 F.2d 923, 927 (3d Cir. 1988) (quoting *Gov't of the V.I. v. Bradshaw*, 726 F.2d 115, 117 (3d Cir. 1984)) (internal quotation marks omitted). Here, the Court finds that the record as a whole conclusively establishes that Defendant is entitled to no relief. Accordingly, the Court will deny the Motion without an evidentiary hearing.

[2] *See* Trial Tr. vol. 2, 44:4-24 (June 12, 2007) (testimony of Detective McDermott); Motion to Suppress Evidence Findings of Fact and Conclusions of Law, Doc. No. 63, ¶¶ 1-4.

[3] Doc. No. 63 at ¶ 4.

officers drove by Defendant's residence, they observed Defendant parking a white Dodge Magnum; upon seeing the officers, Defendant pulled away from the curb, and a high-speed chase ensued.[4]  The pursuit ended when Defendant ran a red light, crashed into a parked car, and then fled on foot, whereupon he was chased down and arrested.[5]

A search of the Magnum's glove compartment revealed a loaded .357 revolver and a car rental agreement in Defendant's name.[6]  One week later, on December 14, 2005, Defendant's girlfriend, Dionne Mitchell, admitted to a Philadelphia police detective that she had two firearms in a closet in her apartment.[7]  A subsequent search of that closet uncovered three firearms:  a Beretta 9mm pistol, a Taurus .25 caliber pistol, and a Beretta .40 caliber pistol.[8]  Mitchell testified at trial that she had purchased the .40 caliber Beretta on November 21, 2005 for Defendant as an early Christmas present, after a trip to a gun store called the Firing Line during which Defendant expressed interest in the firearm.[9]  Mitchell also testified that Defendant frequently stayed at her home, and was the only adult other than herself with access to the closet in which the guns were stored.[10]

On February 26, 2006, Defendant was indicted on one count of being a felon in possession of a firearm, and the case was assigned to this Court.  On April 10, 2007, a superseding indictment charged Defendant with four counts of being a felon in possession of a firearm—one for each of the four guns seized from Defendant's rental car and Mitchell's closet.

---

[4] Trial Tr. vol. 2 at 46:6-55:6.

[5] *Id.* at 54:9-55:6, 59:10-61:9.

[6] *Id.* at 62:11-68:18.

[7] Trial Tr. vol. 3, 54:20-55:21 (June 13, 2007) (testimony of Dionne Mitchell).

[8] Trial Tr. vol. 2, 94:1-96:17 (testimony of Detective McDermott).

[9] Trial Tr. vol. 3, 45:10-48:25 (testimony of Dionne Mitchell).

[10] *Id.* at 44:5-45:5.

Defendant was tried and convicted on Counts Two, Three, and Four (the guns in the closet), but acquitted on Count One (the gun in the rental car).

     Following a hearing on April 30, 2008, Defendant was sentenced to three concurrent terms of 98 months imprisonment,[11] a three-year term of supervised release on each count, a $100 special assessment on each count, and a fine of $5,000.[12]  Defendant's sentence was calculated as follows:  The Probation Officer determined that Defendant's base offense level under U.S.S.G. § 2K2.1(a)(4)(A) was 20, added a two-level enhancement under § 2K2.1(b)(1)(A) because the offense involved three to seven firearms, and added a two-level enhancement under § 3C1.2 for reckless endangerment based on Defendant's flight from the police.[13]  At sentencing, the government also presented the testimony of three detectives and a ballistics expert that the .40 caliber Beretta retrieved from Mitchell's closet was the weapon used in the November 29, 2005 shooting of Justin Thompson.[14]  Based on this evidence and the testimony presented at trial, the Court found that the .40 caliber Beretta was used in connection with an aggravated assault, and accordingly applied a four-level enhancement under § 2K2.1(b)(6).[15]  Because Defendant was in criminal history category III, his guideline range was 97 to 121 months.[16]

---

[11] Defendant has now served his 98-month sentences, but his claim is not moot because he is still to his supervised release terms.  *E.g.*, *United States v. Doe*, 810 F.3d 132, 143 (3d Cir. 2015) (explaining that a § 2255 movant on supervised release may still challenge an already-served term of imprisonment as the district court may reduce the duration of the supervised release term if the movant prevails).

[12] Sentencing Tr. 131:2-133:9 (Apr. 30, 2008).

[13] Government's Sentencing Memorandum, Doc. No. 152, at 8-9.

[14] Sentencing Tr. at 14:8-52:3.

[15] *Id.* at 74:3-16.

[16] *See* Doc. No. 152 at 9.

After an unsuccessful appeal to the Third Circuit on grounds not relevant here,[17]

Defendant filed a § 2255 motion in this Court.[18]  Among other things, Defendant argued that:

(1) counts Three and Four were multiplicitous with Count Two; (2) trial counsel was ineffective

for failing to object on multiplicity grounds; and (3) counsel was ineffective for failing to object

to his sentence enhancement under § 2K2.1(b)(6) on the grounds that the aggravated assault of

Justin Thompson was not "relevant conduct" for Defendant's § 922(g) conviction.[19]  The Court

denied the motion, and Defendant appealed.  The Third Circuit granted a certificate of

appealability on these three issues.[20]

In its briefing on appeal, the government conceded that Counts Three and Four were

multiplicitous with Count Two, and that trial and appellate counsel's failure to raise the issue

rendered them ineffective.[21]  However, the government argued that these claims were not

cognizable under § 2255 because Defendant was sentenced to three identical concurrent terms of

imprisonment, leaving as the only unique adverse consequences of Defendant's convictions on

Counts Three and Four the $100 special assessments associated with each count, and meaning

that Defendant would not be released from custody even if he prevailed on his multiplicity

---

[17] *United States v. Lawrence*, 402 F. App'x 699, 700-01 (3d Cir. 2010).

[18] Doc. No. 182.

[19] *See id.*

[20] Doc. No. 195.  Specifically, the Third Circuit framed the issues as follows:  "(1) whether the District Court erred in denying Lawrence's claim that his three counts of conviction under 18 U.S.C. § 922(g) were multiplicitous because the government had failed to submit to the jury and prove that he had separately received, stored, or possessed the three firearms underlying the three § 922(g) counts, and whether Lawrence can establish cause and prejudice for failing to present this claim at trial or on direct appeal; (2) whether the District Court erred in denying Lawrence's claim that his trial and appellate counsel were ineffective for failing to argue that his three counts of conviction under 18 U.S.C. § 922(g) were multiplicitous because the government had failed to submit to the jury and prove that he had separately received, stored, or possessed the three firearms underlying the three § 922(g) counts; and (3) whether the District Court erred in denying Lawrence's claim that his trial and appellate counsel were ineffective for failing to argue that the U.S.S.G. § 2K2.k(b)(6) enhancement should not apply because the aggravated assault did not qualify as relevant conduct under§ 1B1.3."  *Id.*

[21] *See* Brief for Appellee United States of America at 15, *United States v. Lawrence*, No. 13-4315 (3d Cir. Mar. 16, 2015).

4

claims.[22]  Regarding Defendant's argument that he was not subject to a sentence enhancement for aggravated assault, the government argued, among other things, that the Sentencing Commission's 2014 amendments to the commentary to § 2K2.1 made clear that the aggravated assault was relevant conduct for purposes of determining Defendant's sentence for his § 922(g) conviction.[23]

On September 15, 2015, the Third Circuit issued its opinion in *United States v. Ross*, which held that a defendant's challenge to his sentence under § 2255 was not cognizable where the sentence did not increase defendant's term of imprisonment but merely resulted in the imposition of a $100 special assessment.[24]  Following its decision in *Ross*, the Third Circuit vacated and remanded this Court's September 30, 2013 Order, noting that "on appeal, the Government made certain concessions in its briefing for the first time," and holding that this Court should "should have the opportunity to consider the Government's concessions in the first instance."[25]

The parties then briefed the following issues:  (1) the effect, if any, of the Third Circuit's decision in *United States v. Ross* on Defendant's claims; (2) whether the United States Sentencing Commission's 2014 amendment to the Sentencing Guidelines § 2K2.1 commentary may be considered by this Court; and (3) whether the aggravated assault can be considered relevant conduct and/or whether trial and appellate counsel were ineffective for failing to argue that the aggravated assault was not relevant conduct.[26]

---

[22] *Id.* at 16.

[23] *Id.* at 36-38.

[24] 801 F.3d 374, 382 (3d Cir. 2015).

[25] Doc. No. 200 at 1-2.

[26] Doc. No. 199.

## II.    STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a prisoner serving a sentence in federal custody may petition the court which imposed the sentence to vacate, set aside, or correct the sentence by asserting that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."[27]  "Habeas corpus relief is generally available only to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure."[28]

Where the movant's claim for relief is based on the ineffectiveness of his counsel, the court must determine whether all non-frivolous claims, if true, conclusively fail to establish that counsel was ineffective.[29]  The movant must demonstrate both that his attorney's performance was deficient and that the deficiency caused him prejudice to establish that counsel was ineffective.[30]  An attorney's performance is deficient only if it falls "below an objective standard of reasonableness," and such deficiency prejudices the defense only where "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different."[31]

---

[27] 28 U.S.C. § 2255(a).

[28] *United States v. DeLuca*, 889 F.2d 503, 506 (3d Cir. 1989).

[29] *Gov't of the V.I. v. Weatherwax*, 20 F.3d 572, 574 (3d Cir. 1994).

[30] *Strickland v. Washington*, 466 U.S. 668, 694 (1984); *United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007).

[31] *Shedrick*, 493 F.3d at 299 (citation and internal quotation marks omitted).

### III.    DISCUSSION

#### A.   Defendant's Multiplicity Argument Is Barred by the Third Circuit's Decision in *Ross*.

Not all claims challenging a prisoner's sentence are cognizable under § 2255.  The plain text of the statute "provides relief only to those prisoners who claim the right to be released from 'custody.'"[32]  In *Ross*, the Third Circuit considered whether a defendant was "in custody" under § 2255 where the only additional penalty resulting from the challenged conviction was a special assessment.[33]  The Third Circuit held that "the burden of a special assessment—even one imposed in conjunction with a wrongful conviction—does not amount to 'custody'," and thus that the defendant's "special assessment [could not] serve as the basis for a claim under § 2255."[34]  The Third Circuit also concluded that the defendant could not establish that he was "in custody" based on the collateral consequences of his unlawful conviction, because the defendant had failed to identify any such consequences that did not already flow from his lawful felony convictions.[35]

In *Ross*, the defendant was convicted of seven counts, including possession of a machinegun in violation of 18 U.S.C. § 922(o), for which he was sentenced to seven concurrent ten-year terms of imprisonment and ordered to pay seven $100 special assessments.[36]  Following an unsuccessful direct appeal, Defendant filed a § 2255 motion, arguing that his conviction under § 922(o) was invalid because the trial court had failed to instruct the jury that the statute included

---

[32] *Ross*, 801 F.3d at 379 (quoting 28 U.S.C. § 2255).

[33] *Id.* 378-383.

[34] *Id.* at 382.

[35] *Id.*

[36] *Id.* at 377.  In *Ross*, the defendant was also convicted of an eighth count (possessing a machinegun in furtherance of a drug trafficking crime), for which he was sentenced to a consecutive term of thirty years imprisonment.  *Id.*

a *mens rea* element, and that his counsel was ineffective for failing to object on that ground.[37]
The district court denied the claim on the merits.  On appeal, the government argued that
defendant's claim was not cognizable under § 2255, because even if the conviction under
§ 922(o) were vacated, his sentence would remain unchanged except for the $100 special
assessment associated with that count.[38]  The Third Circuit held that the special assessment alone
did not establish that the defendant was "in custody," and therefore did not reach the merits of
the defendant's claim.[39]

   The Court has little difficulty concluding that *Ross* governs here.  As in *Ross*, Defendant
was convicted on multiple counts for which he was ordered to serve identical concurrent terms of
imprisonment, leaving the $100 special assessments associated with Counts Three and Four as
the only unique, tangible consequences of those convictions.  Under *Ross*, these assessments are
insufficient to establish that Defendant is "in custody," and Defendant has made no effort to
identify any other collateral consequences that could satisfy this threshold requirement of § 2255.
Defendant's multiplicity claims thus are not cognizable.

   Defendant's efforts to distinguish *Ross* are unpersuasive.  Defendant's primary argument
is that *Ross* only involved a challenge to the sufficiency of the evidence supporting the
defendant's § 922(o) conviction, whereas here Defendant claims that his "wrongful conviction
rose to the high level of violating the United States Constitution."[40]  This misconstrues *Ross*,
where the defendant argued that his trial counsel rendered ineffective assistance by failing to

---

[37] *Id.*

[38] *Id.*

[39] *Id.* at 382.

[40] Doc. No. 201 at 2.

object to flawed jury instructions that did not require the jury to find one of the essential elements of the § 922(o) count—undoubtedly a constitutional violation.[41]

More fundamentally, Defendant's argument fails because it presupposes a distinction— found nowhere in the text of the statute—between how § 2255's "in custody" requirement should be interpreted for claims alleging constitutional violations as opposed to claims alleging violations of federal law that fall short of infringing upon constitutional rights.  As the Third Circuit explained, § 2255's "in custody" requirement constitutes a "threshold test" that must be passed before a court can reach the merits of a prisoner's claim.[42]  Nowhere did *Ross* state or imply that this "threshold test" is inapplicable to claims alleging constitutional violations, as Defendant suggests.

Defendant's only other argument for why *Ross* does not foreclose review of his multiplicity claims is that the Third Circuit instructed this Court to reconsider Defendant's claims, rather than simply remanding with an instruction to dismiss them.[43]  The Court declines to engage in guesswork regarding the Third Circuit's motives, however, and will not ignore binding appellate authority based on speculation that the Court of Appeals had a different result in mind.  Because it is clear that *Ross* applies here, the Court cannot reach Defendant's multiplicity claims, regardless of their merit.

---

[41] *Ross*, 801 F.3d at 377; *see also Kolasinac v. United States*, No. 13-1397 (JLL), 2016 WL 1382145, at *5 (D.N.J. Apr. 7, 2016) (holding that petitioner's challenge to $25,000 fine was not cognizable under § 2255, and "[t]hat the claim challenging the fine or restitution order is presented as an ineffective assistance of counsel claims does not change this result").

[42] *Ross*, 801 F.3d at 378.

[43] Doc. No. 201 at 2.

### B. The Aggravated Assault Constitutes Relevant Conduct.

#### 1. The Relationship Between § 2K2.1 and § 1B1.3 of the Guidelines

Defendant also argues that counsel rendered ineffective assistance by failing to object to his four-level sentence enhancement under § 2K2.1(b)(6) on the ground that the shooting was not "relevant conduct" and thus could not be considered.  This claim, unlike Defendant's multiplicity argument, is cognizable under § 2255, as the enhancement affected the length of the sentence he received.  However, this claim fails on the merits.[44]

The Sentencing Guidelines provide a four-level enhancement where a defendant "[u]sed or possessed any firearm or ammunition in connection with another felony offense."[45]  "Proper application of the four-level enhancement under § 2K2.1(b)(6) requires finding, by a preponderance of the evidence, that the defendant used or possessed a firearm; that the defendant committed another felony offense, regardless of whether a criminal charge was brought or a conviction obtained; and that the firearm facilitated, or had the potential of facilitating, the felony offense."[46]

That is not the end of the inquiry, however.  The Third Circuit has held that the application of § 2K2.1(b)(6)'s sentencing enhancement is limited by § 1B1.3, which directs courts to consider a defendant's relevant conduct in determining the base offense level and specific offense characteristics.[47]  Relevant conduct includes "all acts and omissions committed,

---

[44] This claim was originally dismissed in the Court's September 30 Order.  Nonetheless, because the parties have clarified their arguments both in their appellate briefing and in supplemental briefs submitted to this Court, the Court takes this opportunity to further explain its reasoning.

[45] U.S.S.G. § 2K2.1(b)(6).  In late 2005, when Defendant committed his offense, this provision was designated § 2K2.1(b)(5), and it was redesignated § 2K2.1(b)(6) prior to Defendant's sentencing in 2008.  In 2011, the same provision was again redesignated § 2K2.1(b)(6)(B).  Unless otherwise noted, citations are to the 2007 Federal Sentencing Guidelines Manual, in effect at Defendant's sentencing, in which this provision was designated § 2K2.1(b)(6).

[46] *United States v. West*, 643 F.3d 102, 110 (3d Cir. 2011) (citing U.S.S.G. § 2K2.1, comment n.14).

[47] *Id.*

aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant."[48]  More specifically, where the offenses are "of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions . . . [must be] part of the same course of conduct or common scheme or plan as the offense of conviction.[49]  Because unlawful possession of a firearm is a groupable offense under § 3D1.2(d), the aggravated assault must have been part of the same course of conduct or common scheme or plan as Defendant's § 922(g) conviction in order for § 2K2.1(b)(6)'s four-level sentence enhancement to apply.[50]

As both parties appear to acknowledge, this would not be a close question if the current Guidelines had been in effect at the time of Defendant's sentencing.  In 2014, the Sentencing Commission amended the commentary to § 2K2.1 and added application note 14(E), which addresses how relevant conduct principles apply to § 2K2.1.  Application Note 14(E)(i) provides the following example:

> A's offense of conviction is for unlawfully possessing a shotgun on October 15. The court determines that, on the preceding February 10, Defendant A used the shotgun in connection with a robbery.  Ordinarily under these circumstances, subsection (b)(6)(B) applies, and the cross reference in subsection (c)(1) also applies if it results in a greater offense level.

> Ordinarily, the unlawful possession of the shotgun on February 10 "will be part of the same course of conduct or common scheme or plan" as the unlawful possession of the same shotgun on October 15. . . .[51]

As Application Note 14(E)(i) makes clear, a defendant's conviction for unlawful possession of a firearm is subject to enhancement under § 2K2.1(b)(6) if the defendant used that

---

[48] U.S.S.G. § 1B1.3(a)(1)(A).

[49] U.S.S.G. § 1B1.3(a)(2).

[50] *Jansen v. United States,* 369 F.3d 237, 247-48 (3d Cir. 2004) (holding that § 1B1.3(a)(2) applies where the offense of conviction is a groupable offense).  Because in most cases § 1B1.3(a)(2)'s "course of conduct" standard is easier to satisfy than its separate "common scheme or plan" standard, the Court focuses its analysis on the former test.  *See West*, 643 F.3d at 110.

[51] U.S.S.G. § 2K2.1 app. note 14(E)(i).

firearm in connection with another offense (in the example, a robbery) within roughly eight months of the offense of conviction.  There is thus little doubt that the aggravated assault—committed with the .40 caliber Beretta within a month of its purchase and Defendant's arrest—constitutes "relevant conduct" for his § 922(g) conviction under the current Guidelines.

However, "[a]s a general rule, a defendant's sentence should be based on the guidelines "that are in effect on the date that the defendant is sentenced."[52]  Defendant thus argues that Application Note 14(E)(i) effected a substantive change in the Guidelines, that under the 2007 Guidelines, the aggravated assault did not constitute "relevant conduct" for his § 922(g) conviction, and therefore that counsel was ineffective for failing to raise this objection.[53] Defendant also argues that consideration of the 2014 amendments would impermissibly apply a substantive change in the Guidelines retroactively, and violate Defendant's rights under the *ex post facto* clause of the Constitution.[54]  The government responds that Defendant was properly sentenced under the 2007 Guidelines, and thus there is no need to refer to the 2014 amendments in denying his claim.[55]

### 2.  Defendant's Counsel Was Not Ineffective for Failing to Object on Relevant Conduct Grounds

It is well-established that "where defense counsel fails to object to an improper enhancement under the Sentencing Guidelines, counsel has rendered ineffective assistance."[56]

---

[52] *United States v. Corrado*, 53 F.3d 620, 622 (3d Cir. 1995) (citations and internal quotation marks omitted).

[53] Memorandum of Law in Support of Defendant's Pending Section 2255 Motion, Doc. No. 201, at 3-6.  Under Third Circuit law, courts may only consider subsequent amendments to the Guidelines where such amendments are clarifying rather than substantive changes.  *See United States v. Brennan*, 326 F.3d 176, 197 (3d Cir. 2003).

[54] Doc. No. 201 at 5.

[55] Supplemental Memorandum of Law in Opposition to Defendant's Pending Section 2255 Motion, Doc. No. 202, at 10-17.

[56] *Jansen*, 369 F.3d at 244.

However, as an examination of the law interpreting the 2007 Guidelines reveals, Defendant's counsel could not reasonably have expected a relevant conduct objection to succeed.

As an initial matter, at the time of Defendant's sentencing, the Third Circuit had not yet held that relevant conduct principles limited the application of § 2K2.1(b)(6).  It was not until 2010—nearly two years after Defendant's sentencing—that the Third Circuit held in *United States v. Kulick* that § 1B1.3 contained a "general rule of construction" limiting the provisions in § 2K2.1.[57]  And as the *Kulick* court noted, the Courts of Appeals were (and still are) split on that issue,[58] with the Fifth Circuit expressly holding otherwise.[59]  To be sure, defense counsel had "a duty to make reasonable investigations of the law" and, in some cases, "counsel's failure to cite favorable decisions from other courts of appeals indicates deficient performance."[60] Nonetheless, "there is no general duty on the part of defense counsel to anticipate changes in the law," and counsel cannot have been ineffective for failing to raise arguments that may not have been viable until *Kulick* was decided.[61]

Even assuming that counsel should have considered raising a relevant conduct objection in 2008, the prospects of success for such a claim would have been bleak.  "In determining whether offenses are sufficiently related to form a single course of conduct," and thus constitute relevant conduct under § 1B1.3, courts examine:  "(1) the degree of similarity of the offenses; (2) the regularity (repetitions) of the offenses; and (3) the time interval between the offenses."[62]

---

[57] 629 F.3d 165, 169 (3d Cir. 2010).  Notably, *Kulick* did not involve § 2K2.1(b)(6), but rather dealt with § 2K2.1(c)(1)'s "cross-reference" provision.

[58] *Id.*

[59] *See United States v. Outlaw*, 348 F.3d 476, 478 (5th Cir. 2003) (per curiam) (holding that "no logical basis exists for applying the relevant-conduct restriction to section 2K2.1(b)(5)").

[60] *United States v. Otero*, 502 F.3d 331, 336 (3d Cir. 2007).

[61] *Sistrunk v. Vaughn*, 96 F.3d 666, 670-71 (3d Cir. 1996) (citations omitted).

[62] *West*, 643 F.3d at 111.

"No one of these factors is dispositive; however, it is generally held that where one factor is weak or absent, a stronger showing of at least one of the other factors is required."[63]  The government satisfied this standard at the sentencing hearing.

Most importantly, as Defendant concedes, the third factor, temporal proximity, weighs strongly in favor of finding a common course of conduct.[64]  Defendant's girlfriend purchased the .40 caliber Beretta for him on November 21, 2005, and eight days later, the same weapon was used to commit an aggravated assault.  Defendant was then arrested on December 7, and the gun was recovered during a search on December 14.  The entire span of events took place within a one-month period, and, indeed, the facts suggest that Defendant convinced his girlfriend to make a straw purchase of the weapon for him shortly before it was used in an aggravated assault.[65]  The condensed timeframe within which Defendant obtained and used an illegal firearm thus supports the conclusion that Defendant's actions constituted a single course of conduct.

The offenses were also similar.  While the elements of Defendant's felon-in-possession conviction differ from those of the aggravated assault offense, the Third Circuit has instructed that "in evaluating offenses under the similarity prong, a court must not do so at such a level of generality that would render worthless the relevant conduct analysis."[66]  Here, the gun Defendant received on November 21 was used in a shooting in Defendant's neighborhood on November 29.[67]  And as the Court noted during Defendant's sentencing, it was an investigation into this

---

[63] *Id.*

[64] *See* Opening Brief of Appellant at 28, *United States v. Lawrence*, No. 13-4315 (3d Cir. Jan. 6, 2015).

[65] *See* Sentencing Tr. at 121:14-122:22 (Court noting that, given that Mitchell had never purchased a weapon prior to November 21, 2005, and that Defendant accompanied her to the Firing Line where she purchased the weapon, a reasonable inference was that Defendant convinced Mitchell to purchase the weapon for him so that he could use it).

[66] *United States v. Wilson*, 106 F.3d 1140, 1144 (3d Cir. 1997) (citation and internal quotation marks omitted).

[67] Sentencing Tr. at 34:3-6 (testimony of Detective Mullen) (indicating that the November 29 shooting occurred at 1016 N. 46th street); Trial Tr. vol. 2, 46:6-46:8 (indicating that the officers were patrolling 45th street when they encountered Defendant).  It is appropriate to consider the location of the offenses in determining their similarity.  *Cf.*

14

shooting that led to Defendant's arrest and the discovery of the .40 caliber Beretta used to perpetrate the assault.[68]  Finally, that the aggravated assault was a violent felony renders the offenses similar, as there is a well-recognized "nexus between violent crime and the possession of a firearm by any person with a criminal record."[69]

The sole factor that does not weigh in favor of finding a common course of conduct is regularity, as the .40 caliber Beretta was only found to have been used in a single felony other than the offense of conviction.[70]  But given the short timeframe within which Defendant obtained the gun, the assault, and Defendant's arrest, and the factual nexus between the two offenses, the Court concludes that the lack of regularity here is not dispositive.

Third Circuit precedent applying the then-applicable Guidelines is not to the contrary. Defendant makes much of *United States v. Kulick*, in which the Third Circuit held that two offenses involving the same gun (unlawful possession of a firearm and extortion) did not constitute a single course of conduct largely because they occurred twenty-seven months apart.[71] Here, in contrast, Defendant's possession of an unlawful firearm, the November 29 assault, and Defendant's arrest and the subsequent seizure of the firearm all took place within one month.[72]

Defendant next cites *United States v. West*, but that case (also decided after Defendant's sentencing) is distinguishable as well.[73]  In *West*, the defendant was arrested in February 2007

---

*Wilson*, 106 F.3d at 1144 (noting that "the location of the offenses" is relevant to determining similarity in drug cases).

[68] *See* Sentencing Tr. at 69:17-73:7.

[69] *Lewis v. United States*, 445 U.S. 55, 66 (1980).

[70] Opening Brief of Appellant at 27-29.

[71] 629 F.3d at 171.

[72] The Third Circuit also noted the lack of similarity between unlawful possession of a firearm and extortion in *Kulick*, *id.* at 172-73, but in *Kulick*, there was not even an allegation of common purpose, whereas here the government presented evidence tending to show that Defendant obtained an unlawful firearm so that it could be used to perpetrate a violent felony.

[73] *See* Opening Brief of Appellant at 24.

for unlawful possession of a firearm and possession of marijuana, and was subsequently arrested in July 2007 with marijuana and a different firearm.[74]  On these facts, the Third Circuit held that the July 2007 events were not relevant conduct for the purpose of sentencing defendant for his February 2007 firearms offense because they were merely "a pair of similar but isolated and unrelated events."[75]  The same cannot be said here, where Defendant's possession of the Beretta directly preceded and facilitated an aggravated assault eight days later.

Finally, Defendant cites *Jansen v. United States* (the only binding, pre-sentencing authority mentioned in Defendant's briefs on this point), but *Jansen* held only that possession of drugs for personal use was not part of the same course of conduct as possession with intent to distribute.[76]  Defense counsel cannot have been ineffective for opting not to object to Defendant's sentence enhancement armed with only this thin authority.

Other authority available to counsel at Defendant's sentencing suggests that any relevant conduct objection would have been unsuccessful.  For example, in *United States v. Rhind*, the Eleventh Circuit upheld a defendant's sentence enhancement for using unlawful firearms in connection with counterfeiting on the reasoning that "the presence of the firearms protected the counterfeit money from theft during the execution of the felony."[77]  The connection between the firearms and the underlying offense in *Rhind* was more attenuated than the instant case, and counsel thus could reasonably have concluded, after examining the case law, that a relevant conduct objection would have been unsuccessful.

---

[74] 643 F.3d at 106.

[75] *Id.* at 112.

[76] *Jansen*, 369 F.3d at 249 (cited in Appellant's opening brief at 28-29).

[77] 289 F.3d 690, 695 (11th Cir. 2002).

Tellingly, less than one month after Defendant's sentencing, the Third Circuit rejected a challenge remarkably similar to Defendant's current claim.  In *United States v. O'Garro*, the defendant pleaded guilty of being a felon in possession of a firearm under § 922(g), and was given a four-level sentence enhancement because he had committed an assault with the same firearm nineteen days prior to his arrest.[78]  On appeal, the defendant argued that the sentence enhancement was inapplicable because his assault did not constitute "relevant conduct" for the firearms offense.[79]  Assuming *arguendo* that the government was required to show that the assault constituted relevant conduct (which, as noted, was still unsettled at this point), the Third Circuit found the government's "proof that [defendant] possessed the same gun during both incidents satisfie[d] that requirement."[80]  The facts in *O'Garro* bear striking resemblance to those presented at Defendant's sentencing:  in both cases, the unlawful firearm was used to commit an assault within one month of the defendant's arrest.  That the Third Circuit rejected a comparable claim shortly after Defendant's sentencing strongly suggests that Defendant's challenge would have been unsuccessful.

In summary, any relevant conduct objection raised at Defendant's sentencing would have rested on the untested legal position that relevant conduct principles limit § 2K2.1(b)(6), and very likely would have been rejected on the facts even if this proposition had been accepted. Under these circumstances, a reasonable lawyer surveying the case law could well have concluded that such a claim was unlikely to succeed, and that pursuing it would have been a waste of time and effort.[81]  Defendant's trial counsel thus cannot be found ineffective for not

---

[78] 280 F. App'x 220, 221-22 (3d Cir. 2008).

[79] *Id.* at 223.

[80] *Id.* at 224 n.3.

[81] *E.g.*, *Woods v. Lamas*, 631 F. App'x 96, 100 (3d Cir. 2015) (holding that habeas petitioner could not prevail on ineffective assistance claim where "trial counsel could reasonably have foreseen [counterarguments] and concluded

challenging Defendant's sentence enhancement on relevant conduct grounds.  Because

Defendant was properly sentenced under the 2007 Guidelines, there is no need to determine

whether the 2014 amendments to the Guidelines were clarifying or substantive.

## IV.    CONCLUSION

For the reasons stated above, Defendant conclusively fails to establish that his sentence

was improper or that his counsel was ineffective.  As a result, his motion will be denied without

a hearing.  Because Defendant has not made a substantial showing of the denial of a

constitutional right, a certificate of appealability shall not issue.[82]

---

that [defendant's claim] would be unlikely to succeed and that pursuing the [claim] would divert his time and
attention from preparing the defense").  The Court notes that Defendant's counsel objected to the § 2K2.1(b)(6)
sentence enhancement on the ground that the government failed to meet its burden of proof, that the Court overruled
the objection after argument, and that the Court ultimately concluded that there was "a continuum of conduct and
evidence established by the government that links [Defendant] to all of this activity."  Sentencing Tr. at 62:2-63:14,
72:2-73:21.  Given this, it is not at all clear that counsel would have fared any better had he recast his objection in
terms of "relevant conduct" principles.  *Cf. United States v. Thies*, 97 F. App'x 370, 373 (3d Cir. 2004) (holding that
district court did not err in enhancing defendant's sentence where district court did not expressly identify the
relevant conduct test it applied, but the record made clear "that the court understood the tests to be applied and
properly considered the similarity, regularity and temporal relationship of" the offenses).

[82] 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).